UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SHARON FORD-FUGATE, )
    Plaintiff, )
  )
  vs. ) 1:04-cv-1514-RLY-TAB
  )
FEDEX FREIGHT, )
    Defendant. )

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is the motion for summary judgment filed by Defendant, FedEx Freight. For the reasons set forth below, Defendant's motion is **GRANTED** in part, and **DENIED** in part.

**I.    Facts**

1. In May 2000, Plaintiff, Sharon Ford-Fugate, was hired as a custodian at Defendant's Indianapolis Customer Care Center. (Deposition of Sharon Ford-Fugate ("Plaintiff Dep.") at 11-14, Ex. A).

2. On April 30, 2001, Plaintiff was relieved of duty while management investigated a report that she had left the customer center to get lunch without clocking out. (Plaintiff Dep. at 43).

3. After completing its investigation, Defendant reversed its decision and returned Plaintiff to work the very next day. Defendant also paid Plaintiff back pay to compensate her for the wages she would have earned had she not been sent home.

(Plaintiff Dep. at 44).

4. In September 2001, Defendant transferred Plaintiff to a Dock Associate position upon Plaintiff's request. (Plaintiff Dep. at 20-22).

5. Plaintiff received an increase in pay. (Plaintiff Dep. at 20).

6. A Dock Associate's job is to load and unload trucks. (Plaintiff Dep. at 24). At that time, she was the only female working in that position. (Affidavit of Sharon Ford-Fugate ("Plaintiff Aff.") ¶ 19).

7. In Plaintiff's position as Dock Associate, she claims she was treated differently than her male counterparts in the following respects:

   a. Plaintiff was monitored more closely than her male peers and given the worst job assignments. (Plaintiff Dep. at 79; Plaintiff Aff. ¶ 28; Affidavit of Robert Donnerson ("Donnerson Aff.") ¶ 14; Affidavit of Ryan Buster ("Buster Aff.") ¶ 15).

   b. Plaintiff was routinely chastised for being late; however, male employees such as Paul Chadwell, Mike Bailey, Dave Hans, Donnie Gentry, and Mark O'Neal routinely came in late and did not suffer any consequences. (Donnerson Aff. ¶ 12; Buster Aff. ¶ 12).

   c. In mid-2003, Plaintiff was ordered by Frank Hurst, the Customer Center Manager, and Aaron Laging, the Assistant Center Manager for Plaintiff's shift, to begin scanning items within thirteen (13) minutes of her clock-in time. (Plaintiff Aff. ¶ 29; Donnerson Aff. ¶ 9; Buster Aff. ¶ 10). Keith

>Minor, Paul Chadwell, Bruno Alveal, Mike Bailey, Chuck Wright, Dave Hans, Donnie Gentry, Preston Hopkins, Danny Strange, Mark O'Neal, Chris Romine and Otis Holton often scanned products thirty (30) minutes or more after their shift started. (Donnerson Aff. ¶ 9; Buster Aff. ¶ 10).

8. In June 2003, Plaintiff was put on probation for violating the attendance policy by being tardy for work too many times. (Plaintiff Aff. ¶ 31; Deposition of Rodney Adkinson ("Adkinson Dep.") Exs. 9-11).

9. On September 4, 2003, Plaintiff overslept, called Mike Marr, Operations Manager, and informed him of her circumstances. Marr indicated to Plaintiff that she should not worry about being late and to "come on in." (Plaintiff Aff. ¶¶ 36-37).

10. On September 15, 2003, Laging terminated Plaintiff for attendance policy violations. (Plaintiff Aff. ¶ 37).

11. On September 16, 2003, Plaintiff contacted Rodney Atkinson, the Regional Human Resources Manager, and complained to him about her termination. (Plaintiff Aff. ¶ 39).

12. Atkinson informed Plaintiff that the decision was final and that there was nothing he could do. (Plaintiff Aff. ¶ 39).

13. Plaintiff then called Defendant's InTouch Line and stated that her termination was discriminatory in nature, as her male co-workers were allowed to come to work late or received calls at home when they were late to work. (Plaintiff Aff. ¶ 40).

14. The following day, Stuart Baxter, the Division Human Resource Manager, called

Plaintiff and told her that her allegations were being investigated.  (Plaintiff Aff. ¶ 41).

15. On September 18, 2003, Brad Crawford, one of Defendant's corporate attorneys, instructed Adkinson to investigate Plaintiff's allegations.  (Deposition of Rodney Adkinson ("Adkinson Dep.") at 79; Adkinson Dep. Ex. 19).

16. Adkinson learned that the attendance policy was not being applied equally to all Fed Ex employees, and that "the attendance policy needed to be restarted." (Adkinson Dep. at 91).  Therefore, Adkinson did not think Plaintiff should have been terminated.  (Adkinson Dep. Ex. 31).

17. On September 25, 2003, Plaintiff was called to return to her job as Dock Associate.  Defendant paid her for all of the hours she would have been scheduled to work had she not been terminated.  (Plaintiff Dep. at 102-04).

18. On December 2, 2003, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination. The body of the charge reads:

I was hired by FedEx East on May 24, 2000, as [sic] most recently worked as a Dock Associate/Fork Lift Driver. Since January 2001, I have been treated differently than my male peers.  I have been the only female Dock Associate since my hire, however, since my hire I have had my breaks monitored, while my male peers have not; I have routinely been given the more difficult assignments, when my male peers have had their choice of assignment[s] and I have been forced to utilize a female restroom, in earshot and uncomfortable proximity to my male peers['] break facility. I have had my attendance and tardiness monitored more closely than my male peers, resulting in undeserved disciplinary actions and resulting in several undeserved terminations. I was unjustly terminated during the

4

>summer of 2001, and reinstated with back pay the following day without explanation. I was again unjustly terminated on September 15, 2003, for tardiness, and reinstated on September 23, 2003, with back pay. I believe I have been discriminated against, because of my sex (female), in violation of Title VII of the Civil Rights Act of 1964, as amended.

>(Defendant's Ex. 3).

19. Plaintiff continues to work for FedEx. (Plaintiff Dep. at 9).

20. FedEx has never reduced her rate of pay. (Plaintiff Dep. at 80).

21. Plaintiff complains that she is still excessively monitored and that her male co-workers are allowed to come in late or take excessive breaks. (Plaintiff Aff. ¶ 43).

## II.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC v. Finance Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997). The nonmovant may not rest upon mere allegations, but "must set forth specific facts showing there is a genuine issue for trial." FED. R. CIV. P. 56(e). A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) or by "some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## III. Discussion

### A. Sex Discrimination

To establish a claim for disparate treatment sex discrimination under Title VII, a plaintiff can proceed either directly, by presenting direct and/or circumstantial evidence of the employer's discriminatory intent, or indirectly, through the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because Plaintiff does not have any direct evidence of discrimination, the court will proceed under the indirect method of proof.

Under the indirect method, Plaintiff must first establish a prima facie case of sex discrimination. This requires her to show: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated male employees. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

#### 1. Adverse Employment Action

"Title VII does not forbid every act of invidious discrimination that an employer might commit against an employee; the act must be 'with respect to [the employee's] compensation, terms, conditions, or privileges of employment.'" *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 745 (7th Cir. 2002) (citing 42 U.S.C. § 2000e-2(a)(1)).

Only those acts resulting in "adverse employment actions" are cognizable under Title VII. Adverse employment actions are defined as "'a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different job responsibilities, or a decision causing a significant change of benefits.'" *Herrnreiter*, 315 F.3d at 744 (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Here, the adverse employment action of which Plaintiff complains is her termination. Defendant argues that because she was reinstated to her former position just eight days after her termination with full back pay, salary, and benefits, that her termination does not rise to the level of an adverse employment action.

In an opinion recently issued, the Seventh Circuit held that an employee who was terminated and reinstated four months later with back pay, suffered an adverse employment action. *See Phelan v. Cook County*, – F.3d – , 2006 WL 2620986 (7th Cir. Sept. 18, 2005). In reaching its decision, the Court found persuasive a Sixth Circuit case which found that a thirty-seven day suspension without pay was sufficient to constitute an adverse employment action, *see White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 791 (6th Cir. 2004), and a Second Circuit case which found that a one-week suspension without pay was sufficient to establish an adverse employment action, *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001). To find otherwise "would 'allow [ ] an employer unilaterally to cut off the employee's claims for other damages, which have been explicitly authorized by Title VII since the Civil Rights Act of 1991 . . .'" *Phelan*, – F.3d – , 2006 WL 2690986, at * 7. Accordingly, the court

finds that Plaintiff's eight-day termination is sufficient to constitute an adverse employment action.

### 2.     Pretext

Defendant argues that even if Plaintiff establishes a prima facie case of discrimination, her claim must fail because she is unable to establish pretext.

To show that Defendant's reason for terminating Plaintiff was a pretext for discrimination, Plaintiff must show that "the stated reason [(violation of Defendant's attendance policy)] was a fabrication, designed to conceal an unlawful reason." *Kulmani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000). "A 'pretext for discrimination' means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks." *Id.* (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, (2000).

Plaintiff's pretext argument is premised on the fact that similarly-situated male employees were treated more favorably than she. *See Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 561 (7th Cir. 1998) (to show pretext (as well as the fourth element of the prima facie case) the inquiry remains the same: the plaintiff must show that similarly-situated employees were treated more favorably than the plaintiff). This issue is complicated by the fact that Plaintiff is the only female Dock Associate. That said, Plaintiff has produced evidence, through the deposition of Adkinson, that she was treated differently with respect to the attendance policy – she was terminated for violations of the policy while at least one male co-worker was not. However, one cannot ignore the fact

that Defendant investigated her complaint following her termination and reinstated her in a timely fashion.  This evidence tends to dissuade the court that Defendant terminated her because she is female.  On the other hand, Plaintiff complains that even after her reinstatement, she continues to be monitored and not treated the same as her male co-workers.  The court is therefore constrained to find this issue best left for a jury.  Accordingly, the court **DENIES** Defendant's motion with respect to Plaintiff's sex discrimination claim.

>  **B.** **Gender Harassment**

In her Response, Plaintiff argues she was the victim of gender harassment.  However, Plaintiff's EEOC charge of discrimination never alleged gender harassment.  As such, she is barred from bringing this claim.  *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994);  *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202-03 (7th Cir. 1996); *Risk v. Ford Motor Co.*, 48 F.Supp.2d 1135, 1145 (S.D.Ind. 1999).

In addition, Plaintiff did not allege gender harassment in her Complaint.  Indeed, Plaintiff's thirty-six paragraph Complaint does not use the terms "harassment" or "hostile work environment."  The Complaint likewise does not contain the words "severe" or "pervasive" or allege that the "terms, conditions or privileges" of Plaintiff's employment were altered or affected.  Further, the legal claims raised in Plaintiff's Complaint assert only claims for disparate treatment.  Plaintiff has therefore waived any claim that she may have against Defendant for gender harassment.  *See Cheek*, 97 F.3d at 202 ([Plaintiff's sexual harassment claim] . . . "was waived because of its omission from Cheek's

9

Complaint.")

Even if the court were to recognize her claim, Plaintiffs' allegations that she was excessively monitored, excessively paged at work, given more difficult assignments than her male co-workers, and disciplined more than her male co-workers, do not amount to a working environment that could be characterized as "hellish." *Whittaker v. Northern Illinois Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997) ("The workplace that is actionable is the one that is 'hellish.'"). Accordingly, Plaintiff's gender harassment claim must be dismissed.

### C.   Judicial Estoppel

Defendant contends Plaintiff failed to disclose her claim as an asset when she filed her initial bankruptcy petition or at any time afterwards, and that therefore, her claim should be dismissed under the doctrine of judicial estoppel. "Under the doctrine of judicial estoppel, '[a] litigant is forbidden to obtain a victory on one ground and then repudiate that ground in a different case in order to win a second victory.'" *Back v. Town of Cloverdale*, No. TH 99-215-C-T/H, 2001 WL 987832, at *2 (S.D. Ind. July 30, 2001) (quoting *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993). This doctrine has been applied to prevent a debtor in bankruptcy from realizing on an asset which was not listed as an asset in the debtor's schedule supporting her bankruptcy petition. *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("[A] debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends.").

On May 18, 2006, Plaintiff moved to amend her schedule of assets, and on June 1, 2006, entered into a stipulation with the bankruptcy trustee stating that she would pay over any monetary proceeds she obtained from this case in her bankruptcy estate. (Fugate Bankruptcy Petition, 1:04-172-AJM-13, Docket ## 32-33). The court therefore finds that the doctrine of judicial estoppel is not applicable to the facts of this case.

**IV.    Conclusion**

For the reasons set forth above, the court **GRANTS** in part, and **DENIES** in part, Defendant's Motion for Summary Judgment (Docket # 30). The court **GRANTS** Defendant's motion with respect to her gender harassment claim and **DENIES** Defendant's motion with respect to her sex discrimination claim.

**SO ORDERED** this  8th   day of January 2007.

                                                    RICHARD L. YOUNG, JUDGE
                                                  United States District Court
                                                  Southern District of Indiana

Electronic Copies to:

William A. Blue, Jr.
CONSTANGY BROOKS & SMITH LLC
wblue@constangy.com

Kaz Christopher Kikkawa
CONSTANGY, BROOKS & SMITH
KKikkawa@constangy.com

Dennis Francis McCrosson III
MCCROSSON & ASSOCIATES
dmccross@iquest.net

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@swh-law.com